Yes, sir. Good morning. My name is David Rothstein. I represent Shaquan Moran-Stenson. With the court's permission, I would ask to reserve one minute of rebuttal time. You may. Thank you. Okay. And you may begin.                Thank you. The defendant in this case had a Maine State Court conviction under Maine RSA 1103, which governs trafficking in a scheduled drug. At the sentencing hearing in this case, the government had the burden to prove that the conviction qualifies as a controlled substance offense, which turns on whether the scheduled drug element of the offense is divisible. I'd like to make... Didn't your client not dispute he was involved, the substance was crack cocaine? He did not dispute that the substance involved was crack cocaine, but under the approach laid out in Mathis, the focus is not on the defendant's conduct, which is what the court is talking about. The focus is initially on just looking at the statute independent of the conduct and determining whether the statute under which he was convicted was a categorical match. I believe that the government agrees that the Maine statute is not a categorical match with the federal statute. We have to use a modified categorical approach. Well, I would say, Your Honor, that the modified categorical approach does not come into play here. The first step is to determine whether it is a categorical match. If it's a categorical match, you basically just stop. The rest of your argument is that the government has to prove Schedule W categorically.  And that any of the other drugs are just means to commit the crime. Correct. In other words, whether you have, under this statute, whether you have cocaine, whether you have fentanyl... It doesn't matter. The jury doesn't have to determine anything other than it's a Schedule W drug, and therefore, it's an element rather than a means. That is the thrust of my argument. And in support, just to expand on that, what this court... The question is, why did we reach that conclusion on behalf of your client? It's just unclear as to what our analytical pathway is to get there. Right. The analytical pathway, you would follow, Your Honor, is laid out in Mathis. And what the court instructed lower courts to do in Mathis was to look for state court precedent on the issue of whether the state court at issue here in Maine has authoritatively determined that the statute at issue is divisible. So can I ask you particularly about those cases? Because I think the government cites to Sudsbury, Loudoun, and Barnard. How would you distinguish those cases here? The government says, more or less, in those cases, they set out that the type of drug involved is an element of the offense. I think I cite to Sudsbury and Fox, Your Honor, and I think the government cites to Barnard. And I would categorize it as basically a wash. I think there are some cases, for example, Barnard, where in passing, the Maine Supreme Court said that in this case, they had to prove that the drug, I believe, was dilaudid. But in the other two cases, in Sudsbury and Fox, the court said, again, in passing, without much analysis, the court said that the element is whether it was a Schedule W drug. And I would contrast the view of the Maine cases. There are a number of cases that the government cites. They're all obviously good law. They'd cite cases out of Virginia, out of Kansas, out of D.C., Pennsylvania, Nevada. If you look at those state courts, and if you look at the state court decisions, and also in Swaby, those state courts have far more robust precedent than Maine does in terms of making a determination that the crime at issue allows for, in that state, allows for separate penalties based on the possession of separate Schedule W drug, or equivalent of Schedule W drugs. So what I would say, Your Honor, in response to the government's argument, is that there is not authoritative state precedent that would allow this court to draw the conclusion that, frankly, that it drew in Swaby, or that other courts drew. I would also, I want to point out one case that's cited in Kukalon, which is the Virginia case at page 33 of the government's brief. It's called Mejero-Rodriguez. It's a Seventh Circuit case. And in Mejero-Rodriguez, the Seventh Circuit looked at the text of the statute. It looked at Illinois law. It looked at jury instructions. And it determined that under Illinois law, there was not sufficient basis to determine that Illinois, that the state of Illinois, that the courts in Illinois, had determined that the statute was divisible. Therefore, it found that the conviction there, which, as Justice Helpy noted, Harbin involved cocaine. And in Harbin, the court found, and this is a New York case, in Harbin, the court found that under this approach, that conviction did not qualify as a controlled substance offense. Can I ask you just a more practical question? Because I was looking at those Maine cases. And the Maine statute says, which is, in fact, a scheduled drug, right? That's what you have to prove. Correct. Practically speaking, how would you prove that or establish that in a case in Maine without proving what the drug is? Right. Well, first of all, I'd like to point out one thing before I forget about the statute, is that the wording of the Maine statute is unique, in that it says trafficking a scheduled drug, which is different from the wording of the Rhode Island statute, which is a controlled substance. What I would say, and this is not a part of the record, is I would say that the government would have to prove that the defendant in the case at issue had a drug, cocaine, the most common serious drugs of abuse are, of course, going to be cocaine, fentanyl, and methamphetamine. It would have to prove that the defendant had a drug, and it would have to, presumably by judicial notice, because the schedule, I think the court could take judicial notice of it, would have to present that to the jury and allow the jury to have the basis to find that the drug at issue was a scheduled drug. Now, what I am necessarily saying is that it is not clear in Maine that crack cocaine or heroin or methamphetamine is the element. In other words, what I'm saying is that you could have a trial in Maine, potentially, and the defendant could be charged with crack cocaine or trafficking in crack cocaine, and there could be a permissible variance under this statute where if it happens to be, on the unlikely occasion, that it happens to be not crack cocaine or methamphetamine, the defendant could be charged with trafficking in crack cocaine. That it happens to be powder cocaine, barring some sort of due process or prejudice issue, I do believe under the Maine statute that it is at least not clear that the defendant could not, nonetheless, be convicted, which is different than precedent states in other states. So I would say this court looks at, primarily, at state court precedent, and the state court precedent here, I would argue, is basically a draw. It's a wash. It does not, compared to other states, conclusively establish. Well, what you're suggesting is that this federal enhancement of the guidelines would, under this Maine statute, would never apply, not only in your client's case, but probably it's, you know. Well, and one thing I want to say is I'm not here, necessarily, to defend the analytical approach in Mathis, which has been much criticized, but it is the analytical approach. It does lead, potentially, to someone committing a crime in Maine who would be treated differently than someone who commits the same crime in Rhode Island, even in the same circuit, and that has been criticized. In 2023, there was a proposal made to the Sentencing Commission to wipe out the categorical approach, to recraft the guidelines. So there is an approach that either the dissenting judges in Mathis would adopt, which is more, I would say, practical. That has not been changed. Mathis is a 2016 case. There was the sentencing proposal, commission proposal, in 2023. Mathis is still the analysis. What I am saying is that under Mathis, the court, in this case, must vacate and remand for resentencing. Just to pin down, so your position is that we don't have clear guidance from the precedents. It's ambiguous, and because it's ambiguous and because we can't say that it is, in fact, categorical or non-categorical, then the judgment goes in favor of the defendant in this instance. Correct. It would be that it's too ambiguous to say, basically, that the state, the government, carries its burden. I'm sorry, I have another question. Because I think if you look at Mathis and the modified categorical approach, we can also look at the record of conviction. If we look at the indictment, we look at the indictment to see if other alternatives are excluded. Here, the defendant's indictment says he was convicted of trafficking a drug, which was, in fact, cocaine-based. Therefore, it seems to me, perhaps excluding other alternatives, is that enough for us to conclude that the statute is divisible here? Sure. Two points. I obviously agree with the court. I've seen the same document. That is what it says. First point is, under Mathis, I do not read Mathis to say that what they call the peak of the charging document, which your court is referring to, is in itself enough without statutory or case law support. That would be my argument. And secondly, as Nehara, Rodriguez, and Harbin point out, there are a number of reasons why a charging document would have the drug in it. It could be, obviously, notice, double jeopardy reasons, due process reasons, chain of custody reasons. It is not necessarily in itself determinative on the question of whether the statute is divisible. And I have one more question. If the court had not imposed the four-point increase, what would have been the guideline range? I believe, Your Honor, and I may be wrong on this, I believe it would have been 41 to 51. And I'm not contesting that he had the additional, I believe, 18 months for the probation violation. Okay. Thank you. Thank you, counsel. At this time, counsel for the appellee, please introduce yourself on the record to begin. Good morning. May it please the court, Brian Kleinbord on behalf of the government in this case. Your Honors, I think that Maine law does authoritatively answer the question in this case, whether the Maine controlled substance element is divisible. And I base that on the cases that the government cited in its brief, State v. McLaughlin and State v. Bernard. And also, I think the cases that the appellant has cited do nothing to change that and, in fact, only support the conclusion that the statute is divisible. In Bernard, the Maine, the high court of Maine said that the state has the burden to prove every element beyond a reasonable doubt, including that the tablets in that case were, in fact, the substance alleged in the charging document, which in that case was dilaudid. In State v. McLaughlin, a 2018 case from the Maine high court, the court said that... The indictment says that the person is convicted of a controlled substance, Schedule W, and then goes on to say that it was, in fact, X drugs. That doesn't necessarily mean that the element is the Schedule W, as opposed to the specific drug. Well, we know that based on the statute and the cases, the Maine cases interpreting the statute. So if we follow this court's framework in Swaybe v. Yates, we look at three or four different things to determine whether the state statute is divisible. One is the statute itself. One is the state cases interpreting the statute. One is the punishments. And importantly, in Mathis, this court said that if a statute sets out different punishments for different offenses, it necessarily means those are elements of the offense supporting the determination that it's a divisible statute. The Maine controlled substance statute has separate schedules, each of which contain different penalties. If you're convicted of distributing a Class Z scheduled drug, it's a misdemeanor with a maximum penalty of up to 364 days. Whereas if you're convicted under Schedule W, that's a felony, and you're facing up to 10 years. Can I ask you even a more detailed question just related to that point? The defense argues that the Maine Supreme Court has not decided if a defendant can receive separate sentences for trafficking different drugs on the same occasion, or if the jury verdict must be unanimous as to drug types. Are those necessary issues for us to find? I don't think they're necessary issues, Your Honor. I think that would further support the construction that they're elements and the statute's divisible. The government wasn't able to find a Maine case directly addressing separate sentences for separate drugs or jury unanimity. But I think the cases that the government has cited to the court are sufficient to show that Maine views the controlled substance as an element of the offense and that the statute is divisible under Mathis and under Swavey v. Yates. I also think to answer Judge Montecalvo, one of the questions that you put to my opponent, which is looking at both the jury instructions and the indictment, I do read the cases as saying that that is part of the analysis in determining whether a statute is divisible. And I would say that on both of those accounts, in this case, supports the idea that the substance itself is an element of the offense. The jury instruction, the pattern jury instruction in Maine says that a person is guilty of possessing cocaine if the state proves beyond a reasonable doubt that he intentionally or knowingly possessed what he knew or believed to be cocaine and which was, in fact, cocaine. You could not prove in Maine, you could not prove that someone's guilty of possessing cocaine by simply having proof that another scheduled W drug was possessed or distributed. There isn't a pattern jury instruction for trafficking, though. Is there in Maine? No, I have not been able to find that. But the other circuits that have addressed this issue have looked at the possession of the substance jury instruction as well, and I think that this instruction satisfies that. And then the indictment itself, which has already been mentioned, in this case said that Mr. Moran Stenson was alleged to have knowingly trafficked in what he knew or believed to be a scheduled drug, which was, in fact, cocaine-based. So I think this case is, in all important respects, indistinguishable from the other cases. It's indistinguishable from the Suave v. Yates in which this court held that the Rhode Island controlled substance statute was divisible and applied the modified categorical approach. And I would say, importantly, the cases, the out-of-circuit cases that the appellant cites are clearly distinguishable, and I would just briefly mention United States v. Townsend, which itself depended on Harbin v. Sessions, which are two different cases, was very different from both Maine's and Rhode Island's. There, New York said that any substance listed in Schedule I, II, III, or IV was, that the controlled substance was broadly defined as any substance listed in any of those schedules, and the statute provided no indication that the sale of each substance was a distinct offense. Further, the statute carried the same penalty for each substance, and so the Second Circuit concluded that each substance under New York law was a mere means of violating the statute and not a separate alternative element. I would say if this court looks at Justice Kagan's hypothetical in the Mathis case about determining whether something, there are various factual means of violating a statute or separate elements, this case looks very much like the hypothetical that she gives is a deadly weapon. Can I ask you about that? Yeah. So in Mathis, to illustrate the example of means, the Supreme Court used the hypothetical that I think you're going to get to right now, which is that a crime committed with a deadly weapon where a knife, gun, bat, or similar weapon would qualify as the deadly weapon. So even if the jury disagreed about whether the defendant had used a knife or a gun, so long as they all agreed that the defendant had a deadly weapon, they could convict. And in that example, the court said showing that the deadly weapon listed was an alternative means. But so I was thinking about that here for the trafficking of the Schedule W drugs. Isn't it possible that a jury could disagree about is it heroin, is it cocaine? Well, I would say, Your Honor, that actually the analogy here using Justice Kagan's hypothetical would be a controlled substance offense could be either cocaine. I think you have to look at all of the possible drugs. If the defendant for a controlled substance offense, if it's cocaine, marijuana, heroin, LSD, OxyContin, it would list all of those as merely different factual means of committing the same offense. And that's not how the Maine statute or the Rhode Island statute is set out. It doesn't say as long as you find one of these offenses that's a controlled substance, you found the defendant guilty of possessing or distributing a controlled substance offense. It says you have to find that he distributed a controlled W substance to cocaine, which is much different than a controlled Z substance, which is marijuana or something under Schedule Y. The Maine statute and the Rhode Island statute are... are not going to be proven Schedule W at trial. What do they practically do? Well, Your Honor, one of the cases that the appellant has cited I think answers that question thoroughly, which is the Fox case, the 2014 case, where the court held that there was insufficient evidence to affirm the conviction for trafficking in methamphetamine. And as a matter of fact, there was a number, there was a whole host of evidence in that case to establish that the substance was methamphetamine. But nevertheless, the court said there was no evidence that the necessary chemical synthesis had occurred. On these facts, we conclude that the evidence was insufficient because there was no evidence either direct or circumstantial from which the jury could infer that the defendant successfully created methamphetamine. Or that methamphetamine had been created or brought into the premises. So I think it requires a high level of detail about the particular drug. And again, this is true. The detail about the drug doesn't tell the jury that this drug is a Schedule W drug. That's what I'm trying to get at. Is the jury required to find that this drug qualifies as whatever a Schedule W drug is? I believe so, based on the jury instruction. So how does the state prove that at trial? Does the court take judicial notice of it and so inform the jury? I don't know, Your Honor. The cases I have don't go into that level of detail. But I think based on the jury instruction and the indictment in this case, it's clear that... It's clear that the particular substance is an element of the offense, which is what is required under this court's cases in Suave and what the other... It just doesn't help us figure out whether it's divisible. Well, I think it does, Your Honor, because that in addition to the different punishments, if you look at all the factors that this court laid out... But the different Schedule W drugs don't carry different punishments. No, but you look at the controlled substance statute as a whole, you don't just look at Schedule W. That's not what this court did in Suave v. Yates. It didn't just look at Schedule I or Schedule II. It looked at the overall scheme of the statute. So it's not just the drugs within Schedule W. It's all of the controlled substances that are across the board under the drug statute. Let me ask you a related question. In your brief patron scene, you have a discussion about Shepard documents. What other Shepard documents would you be referring to? I know you have the verdict form, but what else would be on the record for purposes of Shepard? Well, Your Honor, the court could look at the guilty plea. I would say that it's not challenged in this case that if we apply the modified categorical approach, that the state court conviction at issue is trafficking in cocaine base, which is a controlled substance under federal law. There's been no challenge to the particular Shepard documents in this case establishing the offensive conviction. So I don't really think that that's an issue that the court needs to get involved with. The Ninth Circuit certified this question to the relevant state court. I noticed neither party has suggested that we do that here. Do you have a position on that? I think that the court can answer the question based on the authorities that have been cited in this case. Certainly there are other questions that have not been answered by the main state courts that could be useful. I would leave that to the court's discretion. Thank you. One-minute rebuttal, counsel Rothstein. Please introduce yourself back on the record to begin, sir. And in order not to interrupt you, I think the same question Judge Montecarlo posed about the certification, use your minute and then tell us what your position would be as to certification. David Rothstein, again, for Sheikh Mohammed Ren Stenson in my rebuttal. Just one point in rebuttal, then I'll address the court's question. Sort of a standard of review issue, there is state court precedent. This court looks to state court precedent. It is ultimately up to this court, I would say de novo, to determine whether that state court precedent is sufficient to sustain the government's argument. I would submit that it is too scant in the state of Maine to sustain the lower court's ruling. But it's obviously up to this court. I would also submit that it is so scant in comparison to other states that with all due respect, a ruling affirming this conviction based on state court precedent would be something of an outlier. With respect to the judge's question, which I definitely did not anticipate before the argument, I would say two things. First of all, it was the state's burden here to make the argument. The state chose to, excuse me, the government chose to do that. The government had the opportunity to concede below that state court precedent was not sufficient to certify the question. It did not do so. That having been said, I would certainly say that it's an important question. Did the issue of certification ever come up below? I do not believe it did. Certainly based on the record that I've read, I didn't see any mention of the issue of certification. I would assume, having sat in the district court for a decade and a half, these issues come up. Enhancements in the sentencing hearing, but it's not like at appellate level we're all discussing for 15, 20 minutes this issue. I assume that's why it didn't come up then. It did not come up. Obviously, if this court found that to be in the greater interest of justice, I could see that. But in terms of error correction in this case, I would argue that the court should decide the case based on this record. Okay. Thank you, counsel. Have a good day.